*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00687-CR & 04-07-00688-CR

Antonio Marcelo **QUESADA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court, Bandera County, Texas
Trial Court No. 06-00391
Honorable Richard A. Evans, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
    Karen Angelini, Justice
    Rebecca Simmons, Justice

Delivered and Filed:    March 18, 2009

AFFIRMED

Antonio Marcelo Quesada was charged with the offenses of driving while intoxicated (DWI) and driving while license suspended (DWLS). A jury found him guilty of both offenses, and assessed punishment. Quesada was sentenced to 180 days confinement and $1,000 fine for the DWI offense; both the fine and imprisonment sentence were probated. He was also sentenced to three days confinement and a $500 fine for the DWLS offense; only the fine was probated. Quesada appeals his conviction, raising the following arguments: (1) defense counsel failed to provide

Quesada with reasonably effective assistance of counsel; (2) the trial court erred in failing to instruct the jury on an affirmative defense; (3) the evidence was factually insufficient to support the DWI conviction; and (4) the evidence was factually insufficient to support the DWLS conviction. We affirm the judgments of the trial court.

## BACKGROUND

Bandera County Sheriff's Deputy Curtis Putz received a call reporting a vehicle, that appeared to be running, parked partly in a public roadway with its lights on. Deputy Putz arrived about five minutes after he received the call. As he approached the vehicle, he smelled what seemed to be tires burning, and found the vehicle very hot to the touch. Deputy Putz approached the open driver's side window, and observed Quesada behind the wheel and Stephen O'Dell in the passenger seat. When asked if he was okay, Quesada did not respond, and instead started his vehicle. At Deputy Putz's direction, Quesada turned the vehicle off and exited the car.

Deputy Putz observed that when Quesada tried to exit the vehicle, he could not immediately find the handle and was then unsteady on his feet. Deputy Putz smelled the odor of alcohol coming from Quesada's breath when he spoke. Quesada took a long time to answer questions, had slurred speech, and bloodshot, watery eyes. He was unable to stand up straight, and leaned on the bumper of the deputy's car, even after he was asked to move. Deputy Putz performed a horizontal gaze nystagmus (HGN) test on Quesada, observing six of a possible six clues indicating intoxication. Quesada failed to follow the instructions for a "walk and turn" test, and refused to perform a "one-legged stand" test.

Based on the above evidence, Deputy Putz arrested Quesada for DWI. Quesada was subsequently charged with both DWI and DWLS. He was convicted by a jury on both counts. This appeal followed.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, Quesada argues his defense counsel failed to provide him with reasonably effective assistance of counsel. To establish ineffective assistance of counsel, the defendant must prove by a preponderance of the evidence that: 1) counsel's performance was so deficient as to fall below an objective standard of reasonableness; and 2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Rylander v. State*, 101 S.W.3d 107, 109-10 (Tex. Crim. App. 2003) (*citing Strickland v. Washington*, 466 U.S. 668, 691 (1984)). A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The *Strickland* standard applies to claims of ineffective assistance both during the guilt/innocence and punishment phases of trial. *Hernandez v. State*, 988 S.W.2d 770, 770 n.3 (Tex. Crim. App. 1999).

As a reviewing court, we cannot speculate as to the reasons why trial counsel acted as he did; rather, we must be highly deferential and presume trial counsel's actions fell within the wide range of reasonable and professional assistance. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Any allegations of ineffectiveness must be firmly founded in the record, and the appellant must prove he was denied a fair trial based on the totality of the representation, not by isolated instances or by only a portion of the trial. *Id.* at 835; *Harling v. State*, 899 S.W.2d 9, 12 (Tex. App.—San Antonio 1995, pet. ref'd). In assessing whether a defendant has met both prongs of *Strickland*, we are limited to the facts of the case and cannot speculate beyond the record

provided. *Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Generally, the trial record will not suffice to establish an ineffective assistance of counsel claim, because a record that is silent as to counsel's intent cannot rebut the presumption that counsel's performance resulted from sound or reasonable trial strategy. *See Thompson*, 9 S.W.3d at 813-814; *Jackson*, 877 S.W.2d at 771.

Quesada contends the record provides ample evidence of ineffective assistance of counsel. His primary argument is that defense counsel argued throughout the trial proceedings that Quesada was under the influence of prescription drugs, not alcohol, and should only be convicted of Driving Under the Influence (DUI)—a crime with which Quesada was never charged. Quesada contends that by making this argument, defense counsel essentially proved the State's claim of intoxication by insisting his client was affected by a drug. However, review of the Charge of the Court shows the State limited the jury's consideration to whether Quesada was under the influence of alcohol; the State did not attempt to prove that additionally or alternatively, Quesada was under the influence of a prescription drug. Consequently, because the record is silent as to defense counsel's motivation in introducing his prescription drug theory, we cannot say he was not employing reasonable trial strategy in trying to provide an alternative to the State's charge of intoxication by alcohol.

Quesada also argues defense counsel failed to investigate a primary witness, pointing to part of defense counsel's opening statement when he noted, "I'm hoping that Mr. O'Dell saw my client take the medication and can testify to that fact, but if not, then I must [put Quesada on the stand]." Quesada contends this statement revealed defense counsel had not interviewed O'Dell, or he would have known what O'Dell saw that night. However, nothing in the record confirms whether or not defense counsel interviewed O'Dell.

Finally, Quesada argues defense counsel's failure to object to testimony regarding a previous arrest was further evidence his performance was below an objective standard of reasonableness. Sergeant Gerald Johnson testified about Quesada's previous arrest for DWI and evading arrest in April of the same year. Quesada argues his April arrest was irrelevant in determining whether he committed DWI and DWLS in June, and the detailed testimony was more prejudicial than probative. *See* TEX. R. EVID. 401 (relevancy of evidence); 403 (allowing exclusion of evidence if the probative value is substantially outweighed by the danger of unfair prejudice); 404(b) (barring evidence of other crimes or acts in order to show defendant's propensity to commit such acts). However, "[a]n isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel." *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). Again, the record is silent as to defense counsel's motives in failing to object to the testimony.

Based on the record and the arguments above, Quesada has failed to establish by a preponderance of the evidence that defense counsel's performance fell below an objective standard of reasonableness, or that there is a reasonable probability that but for his errors, the trial court's verdict would have been different. *See Rylander*, 101 S.W.3d at 109-10. Quesada's first issue is overruled.

### AFFIRMATIVE DEFENSE INSTRUCTION

In his second issue, Quesada argues the trial court erred in failing to instruct the jury on an affirmative defense, resulting in egregious harm. Article 36.14 of the Code of Criminal Procedure provides that "the judge shall, before the argument begins, deliver to the jury, . . . a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). A jury charge error is reviewed under the standard set forth in *Almanza v. State*, 686

S.W.2d 157 (Tex. Crim. App. 1985). Under *Almanza*, we must first determine whether error exists in the jury charge. *See id.* at 171. Second, we must determine whether sufficient harm was caused by the error to require reversal. *Id.* The degree of harm necessary for reversal depends upon whether the error was preserved. *Id.* If the error is properly preserved by an objection to the charge, then a showing of only some harm is sufficient to require reversal; on the other hand, if the error is not properly preserved by an objection to the charge, then a showing of egregious harm is necessary to require reversal. *Id.* An error which results in egregious harm is an error that affects "the very basis of the case," deprives the defendant of a "valuable right," or "virtually affect[s] a defensive theory." *Id.* at 172; see also *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

Quesada did not request an instruction on an affirmative defense, nor did he object to the absence of the instruction in the jury charge. Nevertheless, he argues the trial court erred in failing to instruct the jury on this defensive issue, resulting in egregious harm. However, Article 36.14 imposes no duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues. *Posey v. State*, 966 S.W.2d 57, 60-61 (Tex. Crim. App. 1998). Therefore, there was no error in the jury charge as the trial court did not err by not instructing the jury on Quesada's affirmative defense. *Id.* Quesada's second issue is overruled.

### FACTUAL INSUFFICIENCY

In his third and fourth issues, Quesada argues the evidence was factually insufficient to support his DWI and DWLS convictions. When considering a factual sufficiency challenge, we look at the evidence in a neutral light giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust

or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

Quesada first argues the State failed to prove the elements of DWI. "A person commits [DWI] if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE § 49.04(a) (Vernon 2003). Quesada contends the State failed to prove Quesada "operated" the vehicle, as Deputy Putz testified that after he approached Quesada and asked him if he was okay, Quesada responded by starting up his car. Quesada also argues the State failed to prove beyond a reasonable doubt that Quesada was intoxicated before his car ended up blocking the road.

There is no statutory definition of the term "operate;" however, the Court of Criminal Appeals has stated, "To find operation under [the DWI] standard, the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995) (*citing Barton v. State*, 882 S.W.2d 456, 459 (Tex. App.—Dallas 1994, no pet.)). The State presented evidence that Quesada's father allowed him to use the vehicle; Quesada made statements indicating he was driving, including telling the deputy he had "pulled over" for him (although the officer testified the car was already in the road when he arrived); O'Dell stated Quesada was the only person driving the vehicle; Deputy Putz responded within five minutes to a call reporting a running vehicle, with its lights on, obstructing a roadway; and when Deputy Putz arrived, he smelled burned rubber and found the car hot to the touch, with Quesada behind the wheel. This evidence supports the jury's finding that Quesada was operating the vehicle.

Similarly, evidence presented by the State supported the jury's finding that Quesada was intoxicated when he operated the vehicle. Deputy Putz testified that when he began questioning

Quesada, there was a strong odor of alcohol coming from Quesada's breath. In addition, Deputy Putz stated that Quesada was unsteady on his feet; slow to respond or unresponsive to questions asked; had bloodshot, watery eyes; and failed a field sobriety test. Whether Quesada was intoxicated during the actual moment he operated the car was a fact-question for the jury to decide.

Quesada also challenges the factual sufficiency of the evidence supporting his DWLS suspension. A person commits the offense of driving with an invalid license "if the person operates a motor vehicle on a highway . . . during a period that the person's driver's license or privilege is suspended or revoked under any law of this state . . . ." TEX. TRANSP. CODE ANN. § 521.457(a)(2) (Vernon 2007). Quesada argues that because he never received a mailed, written notice of the suspension, his license was not suspended at the time of his arrest on June 2, 2006. However, Sergeant Johnson testified that when he arrested Quesada for DWI and evading arrest on April 3, 2006, he issued Quesada a notice which stated, "Your license, permit or privilege to operative a motor vehicle will be suspended or denied effective 40 days after the date you receive this ***notice*. . .** " (emphasis added). The notice also stated the suspension would be in effect for not less than 60 days, and it could be contested within 15 days of the notice being received. A copy of the notice was entered into evidence, and Quesada's father testified they never contested the suspension. Consequently, by the notice's terms, the suspension went into effect May 13, 2006, and was active until at least July 12, 2006. This evidence was factually sufficient to support the jury's finding that Quesada was driving with a suspended license.

Based on the above, Quesada's third and fourth issues are overruled.

## CONCLUSION

Quesada failed to prove trial counsel did not provide him with reasonably effective assistance of counsel. In addition, the trial court did not err in failing to *sua sponte* instruct the jury on an affirmative defense. Finally, the evidence presented was factually sufficient to support Quesada's convictions for DWI and DWLS. Accordingly, we affirm the judgments of the trial court.

Catherine Stone, Chief Justice

DO NOT PUBLISH.